IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **BENNY L. CLARK** | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:07-CV-1873-KOB |
| | ) | |
| **MICHAEL J. ASTRUE** | ) | |
| **COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY** | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The claimant, Benny L. Clark, protectively filed applications for Social Security Disability Insurance benefits and Supplemental Security Income payments on October 25, 2004. The claimant alleged disability beginning on May 30, 2003 due to a bulging disc, herniated disc, and back pain. The Commissioner denied these claims on February 8, 2005. The claimant then filed a timely request for a hearing before an Administrative Law Judge ("ALJ"), which occurred on August 3, 2006. In a decision dated September 16, 2006, the ALJ found that the claimant was not disabled within the meaning of the Social Security Act, and, therefore, was not eligible for Social Security Disability Insurance benefits and Supplemental Security Income payments. On August 11, 2007, the Appeals Council denied the claimant's request for review. The claimant has exhausted his administrative remedies, and the U.S. District Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, the decision of the Commissioner will be AFFIRMED.

1

## II. Issues

Claimant presents the following issues for review: (1) whether the ALJ failed to properly apply the pain standard; and (2) whether the ALJ failed to properly consider the evidence provided by the treating physician, Dr. Seymour.

## III. Standard of Review

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the Commissioner's factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Brown*, 826 F.2d 996, 999 (11th Cir. 1987). "No...presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*, but will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but must also view the record in its entirety and take account of evidence that detracts from the evidence on which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). "The [Commissioner's]

failure to apply the correct law or to provide the reviewing Court with the sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 969 F.2d 1143, 1145 (11th Cir. 1991).

### IV. Legal Standard

When a claimant alleges disability through complaints of pain or other subjective symptoms, the standard for evaluating these symptoms

> require[s] (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain.

*Foote v. Charter*, 67 F.3d 1553, 1560 (11th Cir. 1995).

The Commissioner may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). However, the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985).

### V. Facts

The claimant was born in 1956 and was forty-nine at the time of the administrative hearing. (R. 15). He testified to having a 9th or 10th grade education with a General Education Diploma. (R. 31). Claimant's previous work experience over the last 15 years includes a furniture mover and builder (medium and semiskilled), grounds keeper (medium and semiskilled), and plumber helper (very heavy and semiskilled). (R.90). The claimant is currently unemployed.

(R.15).

According to the claimant, he became disabled on May 30, 2003 because of a bulging disc, herniated disc, lower back pain, the inability to bend at times, and the inability to sit, stand or walk for long periods of time. (R. 89). The claimant has a history of degenerative disc disease of his lumbar spine. (R. 16). On November 1, 2000, the claimant's treating physician, Dr. Morris Seymour, an orthopedic surgeon, performed decompression surgery on claimant for a herniated nucleus pulposus to relieve pain, after which the claimant had minimal complaints. (R. 16, 118). On November 30, 2000, the claimant saw Dr. Seymour for a follow up of his surgery when he stated that he was doing quite well with no back or leg pain. (R. 117). The claimant then returned to work until 2003 when his pain returned. (R. 115).

The record reflects no additional treatment until June 6, 2003 when claimant reported increasing back pain. (R. 16). The claimant stated that the pain was a burning, throbbing discomfort in his calf and that he had been using crutches. (R. 115). On June 18, 2003, Dr. Seymour had additional testing performed, including a myelogram and CT, both of which showed the claimant had a recurrent herniated nucleus pulposis. (R. 113). Dr. Seymour told the claimant that he had a compression on the nerve and that a second decompression surgery might help him. (R. 107). Dr. Seymour then referred the claimant to Dr. Morris Scherlis, a specialist in anesthesiology and pain medicine. (R. 128-135).

The claimant sought treatment for his back pain from Dr. Scherlis at the Tennessee Valley Pain Consultants where he had physical therapy from July 3, 2003 to June 16, 2004. (R. 128-135). On July 3, 2003, the claimant presented with a pain rating of 4 out of 10 and received Lortab 7.5 as well as Elevil 25mg. (R. 134). On the same day, Dr. Scherlis also gave the claimant

4

an injection of 10cc of 0.5% Lidocaine, Depo-Medrol 80mg given slowly and incrementally. (R. 135). On November 25, 2003, the claimant reported a pain rating of 1.5-2 out of 10 to Scherlis. (R. 128).

On March 3, 2004, Dr. Scherlis again treated the claimant who presented complaining of a pain rating of 3-4 out of 10, mainly in the lower back extending to the right extremity. (R. 131). Dr. Scherlis stated that the claimant had been recommended to consider repeat lumbar epidural steroid injection, but the claimant declined the offer. (R. 131). On June 16, 2004, the claimant again saw Dr. Scherlis complaining of upper back pain with a low rating of 3 out of 10. (R.131). Dr. Scherlis diagnosed the claimant with thoracic facet syndrome, which is mid-back pain, and lumbar radiculopathy, which is pain radiating down to the lower extremities. (R. 128). During the meeting, the claimant indicated that his pain was 3 out of 10 in the lower back extended into the lower right extremity. (R. 128). Dr. Scherlis noted that as of the June 16, 2004 appointment, "his complaint of low back pain has improved and he is actually experiencing very little pain in his leg at this time. (R. 129).

The claimant filed applications for Social Security Disability Insurance benefits and Supplemental Security Income payments on October 25, 2004. (R. 12). Claimant alleged disability beginning on May 30, 2003 because of a bulging disc, herniated disc, and back pain. (R. 12). The claimant underwent a consultative evaluation on January 19, 2005 by Dr. V. Snehaprabha Reddy, who specialized in internal medicine. (R. 136-137). Dr. Reddy found that the claimant had no joint deformity, muscle wasting, abnormal reflexes, and that the claimant's range of motion in his upper extremities was in normal limits. (R. 137). Dr. Reddy diagnosed the claimant with degenerative disc disease, status post discectomy in year 2000, lumbar

5

radiculopathy, and history of diabetes mellitus II. (R. 137).  Barry Slatton, a disability specialist with the Alabama Disability Determination Service, met with the claimant on February 2, 2005. (R. 32).  Slatton determined that the claimant's condition did not restrict the claimant from performing his past work as a grounds keeper, mower, or rig operator. (R. 32).  On May 22, 2006 at the Paint Rock Valley Primary Health Center, the claimant complained of knee pain, aggravated by walking, but did not continue his complaints on subsequent visits on May 26, 2006 and June 23, 2006. (R. 206-208).

  The ALJ held a hearing on August 3, 2006. (R. 311).  At the hearing, the claimant testified about his pain and alleged impairments. The claimant asserted the following  severe impairments: degenerative disk disease of the lumbar spine, lumbar radiculopathy, diabetes mellitis type II, osteoarthritis, sciatica thoracic faset syndrome, sacroilitis, and hypotension, low back pain, depression and anxiety. (R. 315-317). The claimant testified that he experienced his back pain beginning May 30, 2003 at his job as a furniture mover. (R. 318-319).  He was moving a pallet and experienced severe pain in his back. (R. 319).   The claimant also alleged that he suffered from pain in his right elbow, left wrist, and left shoulder from injuries in 2005. (R. 334). The claimant testified that these injuries did not hurt him until after the May 2003 injury. (R. 334).  When asked if his back had improved, the claimant testified that, "it still hurts, it's nothing like it was, because I couldn't hardly walk." (R. 320).  The claimant testified that he received an epidural injection in his spine, after which the pain worsened. (R. 320-321).  The claimant also testified about the pain in his neck, stating that he experienced pain there but not at its past strength. (R. 322).  He claimed that he had more troubles with his left shoulder, which sometimes affects his ability to use his shoulder and arm. (R. 322). The claimant testified that the

pain affects his ability to lift items, and he is only able to lift items from the table. (R. 324). Asserting that he had trouble walking, sitting, and standing for any extended length of time, the claimant stated that the best position for him was to be lying down. (R. 327-328). After undergoing six weeks of physical therapy, the claimant alleged continuing severe back pain. (R. 333).

The ALJ then examined Anne Darnell, a vocational expert ("VE"), who testified to the claimant's past work experience and the categorization of the jobs. The VE testified that an individual with the claimant's age, education, and past relevant work experience could work in unskilled, light jobs such as photo finisher, information clerk and ticker seller, even with the following restrictions: no climbing of ladders, ropes, and scaffolding; no work at unprotected heights or around dangerous, unguarded machinery; and no work assuming a greater than mild restriction in activities of daily living, social functioning, and concentration, persistence and pace. (R. 335-337). The VE also stated that at least 17,000 such jobs existed within a ninety mile radius of Huntsville, AL. (R.18-19).

In a decision dated September 16, 2006, the ALJ found that the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. (R. 19). The ALJ determined that the claimant has not engaged in substantial, gainful activity since the alleged onset of his disability. (R.14). The ALJ found that the claimant had severe impairments of degenerative disc disease at L5-S1, a history of discectomy at L5-S1 and L4-L5, lumbar radiculopathy, thoracic facet syndrome, and diabetes mellitus. (R.14). The ALJ determined that the impairments did not meet or medically equal the criteria of an impairment listed at 20 C.F.R. Part 404, Subpart P, App. I. (R.15). Also, the ALJ determined that the claimant had an residual functional capacity ("RFC") to

perform a light level of exertion with the following restrictions: the claimant could lift no more than twenty pounds at a time; never use ladders, ropes, or scaffolding; and do no work at unprotected heights or around dangerous unguarded machinery.(R.15)

Applying the pain standard, the ALJ determined that the claimant's "medically determinable impairments could be expected to produce some of the alleged symptoms, but not at the level of severity indicated at the hearing"; he found that the claimant's symptoms and their limiting effects were not entirely credible. (R. 16).  Further, the ALJ determined that the "allegations were not supported by the medical evidence of record." (R. 16). The ALJ considered the records demonstrating the claimant's history of degenerative disc disease of the lumbar spine and his surgery for a herniated nucleus pulposus, the jelly-like substance in the middle of the spinal disc, at L4-L5 and L5-S1.  (R. 16).  However, the ALJ noted that the claimant's allegation of continued severe pain in August of 2003 was contradicted by other records such as the pain rating of 2 out of 10 on November 25, 2003, the apparent failure to undergo a recommended surgery, and Dr. Reddy's findings that the claimant had no joint deformity, muscle wasting, or abnormal reflexes. (R. 16).  The ALJ found that the claimant continued to report pain at less than 5 out of 10 and treatment with injections through June 2004. (R. 16).  While noting the continued treatment, the ALJ held that "there is little evidence to support continuing back pain and the undersigned finds that the claimant has not had significant limitations that would impair his ability to perform work-related activities." (R. 16).

The ALJ determined that the claimant is unable to perform any past relevant work, because of these jobs all exceed the claimant's RFC. (R. 17).  However, the ALJ found that considering the claimant's age, education, work experience, and RFC, jobs exist in significant

numbers in the national economy that the claimant can perform. (R. 18).

## VI. Discussion

**A. The ALJ properly applied the pain standard.**

The claimant argues that the ALJ improperly applied the pain standard and that the ALJ's determinations are not supported by substantial evidence and are inconsistent with the applicable law. The Eleventh Circuit has explained that pain standard applied to a medical condition requires that the "objective medical evidence...confirms the severity of the alleged pain arising from the condition" or that the medical condition is so severe that "it can reasonably be expected to give rise to the alleged pain." *Foote,* 67 F.3d at 1560. Under applicable law, substantial evidence supports the ALJ's determination of the pain standard, and the ALJ provided "the reviewing Court with the sufficient reasoning for determining the proper legal analysis has been conducted." *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

The ALJ determined that the claimant suffered from a combination of severe impairments, including degenerative disc disease at L5-S1, a history of discectomy at L5-S1 and L4-L5, lumbar radiculopaty, and thoracic facet syndrome. Next, the ALJ considered whether the objective medical evidence existed to confirm the asserted severity of the claimant's pain, including back pain. When weighing the objective medical evidence, the ALJ focused in part on evidence showing a history of degenerative disc disease of his lumbar spine. The ALJ found that while the claimant had spinal surgery on November 1, 2000, he recovered and was able to return to work. Afterward, the claimant did not seek further treatment to alleviate his back pain until June of 2003. The Eleventh Circuit has recognized that a claimant's failure to seek treatment for a period of time is a factor that the ALJ may consider in evaluating a claimant's subjective complaints of

pain. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *Watson v. Heckler*, 738 F.2d 1169, 1173 (11th Cir. 1984). Although the claimant stated an intention to have additional surgery, the record does not reflect that any such surgery occurred. Additionally, the ALJ noted the findings of the consultative examiner Dr. Reddy in January 2005, who determined that the claimant had no joint deformity, muscle wasting, abnormal reflexes, and that the claimant's range of motion in his upper extremities was in normal limits. The ALJ found that the failure to seek treatment, failure to procure surgery proffered in response to alleged pain, and Dr. Reddy's findings all contradicted the claimant's allegations of severe pain.

The ALJ observed also that while the claimant did receive injections for pain on July 3, 2003, the claimant continued to report his pain at less than 5 out of 10 through June 2004. For example, the claimant reported pain: on July 3, 2003 rating 4 out of 10, on November 25, rating 1.5-2/10, on March 3, 2004 rating 3-4 out of 10, and on June 16, 2004 rating 3 out of 10. These reports of low to moderate pain levels support the determination that the pain was not disabling. Thus, the claimant's own evaluations of his pain at low to moderate levels, coupled with his failure to seek pain treatment during a significant period of time, contradicts further his assertion of disabling pain. In light of these contradictions, substantial evidence supports the ALJ's finding that the objective medical evidence did not confirm the asserted severity of pain..

Finally, the ALJ determined that the impairments "could reasonably be expected to produce some of the alleged symptoms [of severe back pain,] but not at the level of severity indicated at the hearing." (R.16). The evidence supporting the ALJ's determination regarding the other parts of the pain standard provides substantial support for this determination as well. Accordingly, the court finds that the ALJ properly applied the pain standard in this case.

**B. The ALJ gave proper consideration of a treating physician's testimony**

The claimant also asserts that the ALJ did not give the proper weight to the testimony of the treating physician, Dr. Seymour. Treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *See Crawford. v. Commissioner*, 363 F.3d 1155, 1159 (11th Cir. 2004).

On September 12, 2003, Dr. Seymour stated his opinion that he "think[s] he does have a recurrent herniation of L5-S1 on the right" and that the claimant "had a compression on the nerve and a decompression may help him again."(R.107). The ALJ looked at Dr. Seymour's opinion but found that "although the claimant indicated that he wanted to have additional surgery, this is not shown in the records. However the claimant did continue to report pain at less than 5/10 and treatment with injections continued through June 2004." (R. 16). The ALJ's finding that the additional decompression surgery is not in the records and that the pain was not disabling does not contradict the treating physician's opinion that surgery could also help the claimant. While Dr. Seymour's opinion does support a finding that the claimant experienced some pain, the doctor's opinion does not specifically state the level of pain that the herniation and compression caused nor does it require a finding that the pain was disabling. Thus, ALJ could accept the treating physician's opinion that surgery might help the claimant and still find that the objective medical evidence did not confirm the severity of the pain alleged. Accordingly, the court disagrees with claimant's argument that the ALJ's finding of no disability means the ALJ did not give proper weight to the treating physician's testimony.

### VII. Conclusion

Having found the ALJ properly applied the pain standard and gave proper weight and

consideration to the treating physician's testimony, the court finds that substantial evidence supports the Commissioner's decision. The court will AFFIRM the Commissioner's decision in a separate order.

Dated this 22nd day of June, 2009.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE